UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JUSTIN DALE TUREAU, et al | CIVIL ACTION NO.  13-2969 (lead case) |
| | 13-2977 |
| VERSUS | U.S. DISTRICT JUDGE DEE D. DRELL |
| 2H INCORPORATED, et al | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION

Before the court is plaintiffs' motion to remand, doc. #17, referred to me by the district judge for Report and Recommendation.

This is a suit for damages, remediation, and injunctive relief as the result of oilfield operations on plaintiffs' properties. Plaintiffs are 3 landowners in Avoyelles Parish, Justin Dale Tureau, Kenneth James Guilbeau, and Ritchie Grocer Company, who own four separate but contiguous tracts of land in the Eola Oil Field (Tureau Tracts 1 and 2, Guilbeau tract, and Ritchie Grocer tract). A single suit was filed by them in state court against 2 H Incorporated, Goldsberry Operating Company, Inc., Hess Corporation, BEPCO, L.P., and BOPCO, L.P. whom plaintiffs claim either caused damage while they or their predecessors in interest[1] operated on the tracts or contaminated the subject tracts while operating on other properties.  See  map of all wells at Exhibit 6 attached to the Notice of Removal. This case was removed to this court by defendants BEPCO and

---

[1] Hess's predecessors in interest were, according to plaintiffs, Amerado Petroleum Corp. and Amerada Hess Corp. BEPCO asserts that it is successor only to Sid W. Richardson and Perry R. Bass, Inc. BOPCO is not a successor to any of the companies claimed by plaintiffs in petition, according to it. 2H is sucessor to Tribal Oil Company.

BOPCO on the basis of diversity jurisdiction[2]. In the removal petition, defendants invoke the doctrine of fraudulent *mis*joinder under Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996) and ask the court to ignore the domicile of defendants 2H and Goldsberry. 2H and Goldsberry are Louisiana residents.[3]

## Law on Fraudulent Joinder and Fraudulent Misjoinder

The applicable statute, 28 U.S. § 1332(a), gives federal district courts original "diversity" jurisdiction over suits between citizens of different states if the amount each plaintiff seeks exceeds $75,000.  28 U.S. § 1332(a); Caterpillar v. Lewis, 519 U.S. 61, 62, 117 S.Ct. 467, 469 (1996).  All plaintiffs must be diverse from all defendants for the court to have diversity jurisdiction.  Exxon Mobil Corp. v. Allapattah Services, Inc., 125 S.Ct. 2611, 2635 (2005).  Therefore, where one plaintiff and one defendant are from the same state, ordinarily, federal courts have no jurisdiction under § 1332.  However, any party may argue that such a case is removable on the basis that complete diversity *would* exist if not for the fact that the non-diverse parties have been fraudulently joined in the suit. The doctrine of fraudulent joinder is an exception to the requirement of complete diversity.  Cuevas v. BAC Home Loans Servicing, LP, 648 F3d 242 (5th Cir. 2011). Fraudulent, or "improper joinder"[4], can be established by actual fraud in the pleading of jurisdictional facts, or by

---

[2] Case number 13-2977  was removed to this court by defendant Hess. It is the same state court  lawsuit as this one and has now been consolidated with this case.

[3] Goldsberry, alleged by defendants to be a defunct corporation, was formally dissolved soon after this suit was filed and thus no longer exists as a juridical person. The corporate status of 2H was revoked by the Louisiana Secretary of State some 29 years ago  but it has not been formally dissolved.

[4] The Fifth Circuit has suggested that the term "improper joinder" is more consistent with the statutory language than "fraudulent joinder" and is thus preferred. Smallwood v. Illinois Central Gulf Railroad Company, 385 F.3d 568 (5th Cir. 2004). However, the term "improper joinder" is less

2

an inability of a plaintiff to establish a cause of action against a defendant in state court. *McKee v. Kansas City Southern Railway Co.*, 358 F.3d 329, 333 (5th Cir. 2004); Travis v. Irby, 326 F.3d 644, 647 (5th Cir. 2003). The court determines whether that party has any possibility of recovery against the party whose joinder is questioned. If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no fraudulent joinder. This possibility, however, must be reasonable, not merely theoretical. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir.2002).

Fraudulent *mis*joinder has been recognized to exist where a diverse defendant is joined with a nondiverse defendant where the claims against each have no real connection to each other. While the term has not always been given a consistent meaning by the courts, it is often used now, as it is in this case, to refer to joinder of the kind described in Tapscott, supra. In Tapscott, the court recognized that a defendant's "right of removal cannot be defeated by the fraudulent joinder of a resident defendant having no real connection with the controversy", citing Wilson v. Republic Iron & Steel Co., 42 S. Ct. 35, 37 (1921). But the court pointed out that it did not hold that "mere misjoinder" is fraudulent joinder but where, in that case, an attempt to join parties is "so egregious" it would be considered to be fraudulent joinder.

In Tomlinson v. Deutsche Bank Nat. Trust Co., 2014 WL 346922, Magistrate Judge Kurren noted that fraudulent misjoinder as defined by Tapscott, has not been broadly accepted by appellate

---

precise and is, as in this case, sometimes cause for confusion, particularly where issues are presented as to both fraudulent joinder and "misjoinder" under Rules 20 & 21 as well as longstanding concepts of joinder under Louisiana law. See, e.g. Crockett v. R. J. Reynolds Tobacco Co., 436 F. 3d 529 (5th Cir. 2006)(using the term "improper joinder" to refer to Rule 20(a) joinder to distinguish it from "fraudulent joinder").

3

courts, citing In re Prempro Products Liability Lit., 591 F.3d 613, 620 (8th Cir. 2010).[5] Tapscott type fraudulent joinder has been widely criticized as shown by the cases set forth in the second paragraph of footnote 5, supra, and others. For example, in Stephens v. Kaiser Foundation, 807 F.Supp.2d 375 (D. Maryland, 2011), District Judge Bennett observed:

> as commentators have noted, "[t]he court's language injects a considerable degree of ambiguity into the holding by intimating that there is some threshold above simple [mere] misjoinder that needs to be passed to constitute the new form of fraudulent

---

[5] Judge Kurren continued: "The Eleventh Circuit, is the only federal appellate court to expressly adopt the doctrine of fraudulent misjoinder. See Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir.1996). The Fifth, Eighth, Ninth, and Tenth Circuits have acknowledged its possible applicability, but have yet to expressly accept it or apply it in any case. See In re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir.2002) (citing Tapscott, 77 F.3d at 1360) ("[I]t might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction."); California Dump Truck Owners Ass'n v. Cummins Engine Co., Inc., 24 Fed.Appx. 727, 729 (9th Cir.2001) ("For purposes of discussion we will assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs."); Lafelier v. State Farm Fire and Cas. Co., 391 Fed. Appx. 732 (10th Cir.2012) ("There may be good reasons to adopt procedural misjoinder .... but we need not decide that issue today."); Prempro, 591 F.3d at 620 n. 4.

* * *

"As the Eighth Circuit observed in Prempro, other "Courts' reactions to Tapscott have been mixed." Prempro, 591 F.3d at 620. While some district courts outside the Eleventh circuit have adopted the doctrine, see e.g., In re Diet Drugs, No. 98–20478, 1999 WL 554584, at *3 (E.D.Pa. July 16, 1999) (unreported) (explaining that plaintiffs' egregious misjoinder "wrongfully deprives Defendants of their right of removal."); Reed v. American Medical Sec. Group, Inc., 324 F.Supp.2d 798, 805 (S.D.Miss.2004) (adopting the fraudulent misjoinder doctrine because "diverse defendants ought not be deprived of their right to a federal forum by such a contrivance as this."), "[o]ther courts have criticized Tapscott, arguing that questions of joinder under state law do not implicate federal subject matter jurisdiction, federal jurisdiction is to be narrowly construed, and the fraudulent misjoinder doctrine has created an unpredictable and complex jurisdictional rule." Prempro, 591 F.3d at 621–622; see also Osborn v. Metropolitan Life Ins. Co., 341 F.Supp.2d 1123, 1127 (E.D.Cal.2004) (rejecting fraudulent misjoinder because "the last thing the federal courts need is more procedural Tapscott is an improper expansion of federal diversity jurisdiction, and "whether viable state-law claims have been misjoined-even 'egregiously' misjoined-is a matter to be resolved by a state court."); Geffen v. General Elec. Co., 575 F.Supp.2d 865, 871 (N.D.Ohio 2008) (rejecting fraudulent misjoinder as a dubious doctrine requiring the court to "wade into a thorny thicket of unsettled law.")." Tomlinson v. Deutsche Bank Nat. Trust Co., 2014 WL 346922 (D. Hawaii, 2014).

4

joinder that it was recognizing in the Tapscott decision." 14B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, Federal Practice & Procedure § 3723 (4th ed.2009). By injecting an 'egregiousness' element into the procedural misjoinder inquiry, Wright & Miller have noted that the Eleventh Circuit's approach would further complicate the already muddied waters: "The fraudulent-joinder doctrine and its allied jurisprudence adds a level of complexity—and additional litigation—to a federal court's decision regarding removal, however. The complexity is increased if the Eleventh Circuit's admonition that not all procedural misjoinder rises to the level of fraudulent joinder is accepted." 14B Wright & Miller, supra at § 3723.

Judge Bennett continued: "The United States Court of Appeals for the Fourth Circuit has not addressed whether, in finding fraudulent misjoinder, a district court must make a finding of misjoinder and a finding of egregiousness or a bad faith attempt to defeat diversity. However, the majority of district courts that have considered the issue have rejected the need to make an additional finding of egregiousness. See, e.g., Hughes v. Sears, Roebuck and Co., No. 2:09–CV–93, 2009 WL 2877424, at *5 (N.D.W.Va. Sept. 3, 2009); In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig., No. 07–1487, 2007 WL 2572048, at *3 (D.Minn. Aug. 30, 2007); Burns v. W.S. Life Ins. Co., 298 F.Supp.2d 401, 403 (S.D.W.Va.2004); Grennell v. W.S. Life Ins. Co., 298 F.Supp.2d 390, 397 (S.D.W.Va.2004); Greene v. Wyeth, 344 F.Supp.2d 674 (D.Nev.2004); In re Rezulin Prods. Liab. Litig., 168 F.Supp.2d 136 (S.D.N.Y.2001)." The court noted in a footnote that other courts have reached the opposite conclusion and have imposed an additional egregiousness component to the fraudulent misjoinder inquiry, citing In re: Baycol Prods. Litig., MDL No. 1431(MJD), Case No. 03–2931, 2003 WL 22341303, at *3 (D.Minn.2003) (citing cases).

Judge Bennett concluded that a finding of egregiousness is not material to the fraudulent misjoinder analysis and rejected the interjection of a "state of mind" element into the misjoinder analysis. Instead, Judge Bennett limited his inquiry to whether the requirements of FRCP 20(a) had

5

been satisfied, that is whether the parties had been misjoined.[6]

This court has also criticized the doctrine. See Booth v. Louisiana Citizens Coastal Plan, et al 2007 WL 933665 (W. D. La., Wilson, M.J., 2007) (overruled only as to the procedure utilized ) in Beck v. State Farm Fire & Casualty Co., 07-1998). Indeed, this court has simply applied Rule 21 to sever or ignore misjoined claims even after giving lip service to the Tapscott "fraudulent misjoinder" doctrine. See Frankland v. State Farm Fire & Casualty Co. 2008 WL 4072819 (W. D. La.) and Constance et al v. Austral Oil Exploration Company, Inc., et al, 2013 WL 495781 (W. D. La.).

The Fifth Circuit has considered the issue of the applicability of the doctrine of fraudulent misjoinder in two cases: In re Benjamin Moore & Co., 309 F.3d 296 (5th Cir. 2002) and Crockett v. R. J. Reynolds Tobacco Co., 436 F.3d 529, 533 (5th Cir. 2006). In In re Benjamin Moore, the court noted that "it might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction."[7] While the court cited Tapscott, it did not address whether Tapscott's requirement of a finding of egregiousness should apply in this Circuit. In Crockett, the court held that the voluntary-involuntary rule[8] is inapplicable where a claim against a non-diverse or in-state

---

[6] Apparently the District of Maryland is one of those districts which apply FRCP Rule 20(a) in order to determine proper joinder. Here, state law should be applied. See Williams, infra. As Magistrate Judge Kay noted in Frankland v. State Farm Fire & Casualty Co., 2008 WL 4072819, "[t]he majority of courts that have addressed the issue have held that state, rather than federal joinder law should apply. See *Fed. Ins. Co. V. Tyco Int'l Ltd.*, 422 F. Supp.2d 357, 381 (S.D.N.Y. 2006) (compiling federal cases)."

[7] This is essentially the same language used by the Supreme Court in Wilson, supra, cited by the Tapscott court (A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.")

[8] The judicially-created "voluntary-involuntary" rule states that "an action nonremovable when commenced may become removable thereafter only by the voluntary act of the plaintiff."

6

defendant is dismissed on account of improper (mis) joinder. The suit was initially not removable because of the presence of two in-state defendants. When the in-state defendants were severed by the state court judge, the case was removed. The Fifth Circuit held that the removal was proper, noting:

> [t]he fraudulent joinder exception to the voluntary-involuntary rule is designed to prevent plaintiffs from blocking removal by joining nondiverse and/or in-state defendants who should not be parties. That salutary purpose is also served by recognizing an exception to the voluntary-involuntary rule where defendants are improperly, though not fraudulently, joined. We therefore conclude that removal on the basis of an unappealed severance, by a state court, of claims against improperly joined defendants is not subject to the voluntary-involuntary rule.

The court simply applied Rule 20(a) and, while Tapscott was cited in a footnote, there was no discussion of the need for a finding of egregiousness. In both cases, the 5th Circuit found that the issue was whether parties were properly joined.

I see no good reason to engage in the Tapscott analysis of egregiousness. Therefore, considering the persuasive arguments against Tapscott and the Fifth Circuit's observations, I conclude that the proper inquiry is simply whether there exists a misjoinder of plaintiffs which misjoinder hinders this court's exercise of its diversity jurisdiction.

### Is joinder proper in this case?

In order to determine whether misjoinder has occurred, state law should be applied. Williams v. Executive Risk Specialty Ins. Co., 2011 WL 2461346 (W.D. La. 2011) and district court cases cited therein.[9] Under Louisiana law, joinder is proper where there is a "community of interest"

---

Weems v. Louis Dreyfus Corp., 380 F.2d 545, 547 (5th Cir.1967).

[9] But see Crockett v. R. J. Reynolds Tobacco Co., 436 F. 3d 529 (5th Cir. 2006), discussed infra, where the court applied Rule 20(a), not state law.

between plaintiffs, jurisdiction and venue is proper, and all of the actions are "mutually consistent" and employ the same form of procedure. At issue here is whether there exists a community of interest between all of the plaintiffs. Community of interest is defined as the parties' causes of action (or defenses) having arisen "out of the same facts, or presenting the same factual and legal issues." Stevens v. Bd. of Trustees, 309 So.2d 144, 147 (La. 1975).

The removing defendants argue that each of the plaintiffs' claims is separate and distinct in that each is as to a separate piece of property and, therefore, none of the plaintiffs have any interest in the damages to other plaintiffs' tracts. Further, defendants argue that each of the defendants operated only on certain of the four tracts. Specifically, as shown on the map of all wells attached as Exhibit 6 to the Notice of Removal, Hess, through its predecessor, Amerada Petroleum Company, operated only on the Guilbeau and Tureau 1 tracts. 2H (successor to Tribal Oil Company), operated only on the Guilbeau tract. And BEPCO's predecessor, Sid W. Richardson Inc., operated only on the Ritchie Grocer tract. BOPCO and Goldsberry did not operate on any of the 4 tracts. Therefore, defendants suggest, there is no community of interest between the parties as to the 4 tracts and joinder is improper (misjoinder), and thus the citizenship of 2H and of Goldsberry should be ignored for jurisdictional purposes.

On the other hand, plaintiffs assert several arguments in favor of remand. First, they suggest that removal was procedurally defective because 2H was served but did not consent to the removal. Second, they argue that diversity is not complete since 2H and Goldsberry are Louisiana residents and since plaintiffs are claiming that all defendants' pollutants co-mingled to cause some of the damages claimed on the contiguous tracts. Plaintiffs point to the reports of two of their expert witnesses to show the possibility of cross contamination between the tracts.

Plaintiffs and defendants agree that the monetary jurisdictional limit is not an issue in the remand motion.

a) Consent to removal

The statute, 28 U.S.C. §1446(a), has been interpreted to require that all then served properly joined defendants join in the timely filed removal petition. See Getty Oil Corporation v. INA, 841 F.2d 1254 (5th Cir. 1988); Fontenot v. Global Marine, Inc., 703 F.2d 867, 870 n.3 (5th Cir. 1983)[10]. In support of remand, plaintiffs point to a letter sent by the state court Clerk of Court stating that service of process had been made on defendant 2H. In fact, however, that letter was sent in error, as shown by the acknowledgment to that effect by the Clerk of Court obtained by defendants. It appears, therefore, that 2 H was in fact not served. I note that in their reply brief plaintiffs do not address lack of consent nor do they contest the proof obtained by defendants that the clerk was mistaken in first stating that service had been made. Since 2H was not served at the time of removal, its consent to removal was not required

b) Fraudulent misjoinder

As noted above, fraudulent *mis*joinder has been recognized to exist where a diverse defendant is joined with a nondiverse defendant and the claims against each have no real connection to each other. Joinder is proper where there is a "community of interest" between plaintiffs, jurisdiction and venue are proper, and all of the actions are "mutually consistent" and employ the same form of procedure. At issue here is whether there exists a community of interest between all of the plaintiffs.

---

[10] There are some narrow exceptions to this rule not applicable here. See discussion in Getty at n.9.

The test in determining whether parties have a community of interest is whether the cumulated causes of action arise out of the same facts or whether they present the same factual or legal issues. Albarado v. Union Pacific R.R. Co., Inc., 787 So.2d 431 (La. App. 4th Cir. 2001). There must be enough factual overlap in the cases to make it sensible to try them together. Lavie v. Lavie, 850 So. 2d 1 (La. App. 4 Cir. 2003).

Plaintiffs argue that a community of interest exists among the landowners because the four tracts of land are contiguous and the wells are "in relatively close proximity" to one another and are in the same oilfield pursuant to "field wide rules" established for the Eola Oil Field in what plaintiffs claim were a precursor to statutory unitization rules. Production in the field began in 1939 by defendants' predecessors in interest. Plaintiffs also point to the opinions of their two experts that the operations are "capable of causing" contamination and "any potential contaminants . . . would co-mingle" during flooding.[11]

Plaintiffs admit that, at this stage of the proceedings, they have no evidence that any well contaminants co-mingled to affect the various tracts and claim only the potential for such. In brief, plaintiffs refer to the possibility of contamination with phrases such as "has the potential to be commingled", "[i]f such commingling or mixing has occurred", "[i]f there has been any commingling".[12]

---

[11] Defendants argue that the affidavit testimony of plaintiffs' experts should not be considered and correctly suggest that the 5th Circuit has cautioned against having a full scale evidentiary hearing for purposes of deciding a motion to remand. Green v. Amerada Hess Corp.,707 F.2d 201 (5th C. 1983). However, consideration of summary judgment type evidence is entirely appropriate on a motion to remand. See Smallwood v. Illinois Central R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004).

[12] FRCP 11(b)(3) provides that by signing a pleading the attorney certifies that "the factual contentions have evidentiary support or, *if specifically identified*, will likely have evidentiary support

I find that the opinions of the experts contained in their affidavits contain nothing more than conjecture and speculation and even pure guesswork. They are not based on adequate facts data, testing or investigation. FRE 702,704.

But, regardless of the usefulness, *vel non*, of the expert opinions, I find that the claims in this case against the various parties were not properly joined. The fact is that each plaintiffs' claim differs from the others'. Referring to Exhibit 6, the map of all wells, only BEPCO's predecessor operated on the Ritchie Grocer tract. Even if the co-mingling argument is considered, Hess would be the only additional defendant as to that tract as it is the only defendant with a well closeby. BOPCO, 2H and Goldsberry have nothing to do with the tract. Similarly, only Hess's and 2H's predecessors operated on the Guilbeau tract. The only other defendant, if co-mingling is considered, is Goldsberry with a well nearby. BEPCO and BOPCO have nothing to do with that tract. Only Hess's predecessors operated on Tureau 1; the only additional defendant on account of co-mingling would be 2H and, perhaps, BEPCO. BOPCO and Goldsberry have nothing to do with the tract. None of the defendants operated on Tureau tract 2 and Hess is the only party with a well close to the tract.

The tracts, though contiguous, are, as shown on Exhibit 6, of various acreages and are each unique as to shape, terrain, operators and proximity of wells and each would require different proof. Various operators operated on the various tracts at different times. The damages incurred by each landowner would require separate testimony and evidence and dissimilar calculations. The distances to wells on adjoining tracts and evidence as to whether cross contamination could have occurred would necessarily be different as to each tract. And, there is no basis to believe that cross

---

after a reasonable opportunity for further investigation or discovery" (emphasis added).

contamination has occurred. I find, therefore, that there is no community of interest among the various claims of the plaintiffs against different defendants, and each requires specific proof and damage calculations, and that plaintiffs and defendants were mis-joined in this action. See Broussard v. Hilcorp Energy, Co., 998 So.2d 946,953 (La.App. 3rd Cir. 2008), Constance v. Austral Oil Exploration Co., 2013 WL 495782 (W.D.La. 2013), Dietz v. Superior Oil Co., 2013 WL 6488247 (La. App. 3d C. 2013).

Therefore, because they are misjoined, I will recommend that the three plaintiffs' claims be severed pursuant to FRCP Rule 21. Thus it is necessary to examine the court's jurisdiction over each of the three suits to determine if any should be remanded. Please refer to the map of all wells, Exhibit 6, attachment number 7, and recall that each of the plaintiffs is proceeding against all four defendants as to their tract or tracts.

The only defendant which plaintiff Ritchie Grocer claims operated on its tract is BEPCO who is diverse. Based on plaintiffs' conclusory allegations[13] and admission that they have no evidence of comingling, there is no reasonable basis to believe that 2H or Goldsberry, the in-state defendants, caused any contamination on the tract, there is no community of interest between BEPCO and 2H and Goldsberry and the two companies (2H and Goldsberry) are misjoined as defendants. Goldsberry is also misjoined because it does not exist.

The only defendant who operated on the Tureau tracts is Hess (on tract 1). Based on plaintiffs' conclusory allegations and admission that they have no evidence of comingling, there is no reasonable basis to believe that 2H or Goldsberry caused any contamination on the tract, there is no community of interest between Hess and 2H and Goldsberry and the two companies (2H and

---

[13] See Kling Realty Co. Inc. v. Chevron USA Inc., 575 F.3d 510 (5th Cir. 2009).

Goldsberry) are misjoined as defendants. Again, Goldsberry is misjoined because it does not exist.

The only defendants which plaintiff Guilbeau claims operated on its tract are Hess and 2H. Hess is diverse; 2 H is not. Based on plaintiffs' conclusory allegations and admission that they have no evidence of comingling, there is no reasonable basis to believe that Goldsberry caused any contamination on the tract. Further, it cannot be a party because it no longer exists. Therefore, Goldsberry is mis-joined. Further, as will be discussed below, if 2 H is defunct, then there is no community of interest between Hess and it and it too is misjoined.

Finally, Goldsberry is *fraudulently* joined because there is no reasonable possibility of recovery against it because it doesn't exist.

2 H also may be fraudulently joined if there is no reasonable possibility of recovery against it. The possibility of recovery must be reasonable, not theoretical. Great Plains Trust Co., supra. Defendants claim, and plaintiffs admit, that 2 H's corporate charter was revoked 29 years ago. Nevertheless, as plaintiffs correctly point out, the corporation's existence does not cease to exist just because its charter is revoked. Tiger Ho, L.L.C. v. DiGiovanni, 952 So.2d 744 (4th C. 2007). The issue here is even if it legally exists, is there any possibility of recovery from it. While it appears from the fact it's charter was revoked 29 years ago and not reinstated and from the fact that service of process could not be made on it, that that might well be the case, the court cannot be certain. Therefore, discovery on this narrow issue is required using a summary judgment like procedure, to determine if, indeed, 2 H is fraudulently joined.

In this case, dropping[14] the mis-joined and fraudulently joined defendants is necessary to

---

[14] FRCP 21 provides that the court may "drop" a party–even a properly joined party-- on any terms that are just, provided, of course, that the party is not an indispensable party. Therefore, without a finding of fraudulent joinder or of fraudulent misjoinder, this court has the discretion to

13

preserve this court's jurisdiction over the diverse defendants. <u>Wilson v. Republic Iron & Steel Co.</u>, 42 S. Ct. 35, 37 (1921) ( defendant's "right of removal cannot be defeated by the fraudulent joinder of a resident defendant having no real connection with the controversy").   Therefore, defendant Goldsberry should be dropped as a defendant from all three actions. Defendant 2 H should be dropped from the Ritchie and Tureau suits. Whether 2 H should be dropped from the Guilbeau suit because it is misjoined or because it is fraudulently joined will have to await the discovery mentioned above.

For the foregoing reasons,

IT IS  RECOMMENDED THAT   the three  plaintiffs' claims be severed and that each plaintiff proceed under a new docket number.

IT IS FURTHER RECOMMENDED THAT the Louisiana defendant Goldsberry, be dropped as a party defendant pursuant to FRCP 21.

IT IS FURTHER RECOMMENDED THAT the Louisiana defendant 2 H, be dropped as a party defendant pursuant to FRCP 21 from the Ritchie Grocer and Tureau suits.

IT IS FURTHER RECOMMENDED THAT the Motion to Remand be DENIED as to the Ritchie suit and as to the Tureau suit, and that the motion be pretermitted in the Guilbeau suit pending discovery as ordered separately today.

**OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections,

---

drop a party where necessary.

reply briefs etc.) may be filed. Providing a courtesy copy of the objection tot he magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this 14th day of March, 2014.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE