c

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 1 6 2015

TONY R. MOORE, CLERK
BY ⎯⎯⎯⎯⎯⎯⎯⎯⎯
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

RITCHIE GROCER CO.          DOCKET NO.:1:14-cv-02868

VERSUS
                            JUDGE DEE D. DRELL
2H, INC., ET AL.            MAGISTRATE JUDGE JAMES D. KIRK

### REPORT AND RECOMMENDATION

Before the court is a partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants, BEPCO, L.P. and BOPCO, L.P. on July 16, 2015 (Doc. 77). Defendants seek dismissal of claims asserted by plaintiff, Ritchie Grocer Co., in the original and amended complaint (Docs. 1-2, 64-3).

Plaintiff initially filed this "legacy litigation"[1] lawsuit in the 12th Judicial District Court, Parish of Avoyelles with two other landowners, Justin Dale Tureau and Kenneth James Guilbeau. The three plaintiffs owned four separate but contiguous tracts of land in the Eola Oil Field that they alleged were contaminated as a result of oilfield exploration conducted by 2H, Incorporated, Goldsberry Operating Company, Inc., Hess Corporation, BEPCO, L.P. and BOPCO,

---

[1] As explained in Marin v. Exxon Mobil Corp., 48 So.3d 234, 238 n.1 (La.2010), "'[l]egacy litigation' refers to hundreds of cases filed by landowners seeking damages from oil and gas exploration companies for alleged environmental damage . . . These types of actions are known as 'legacy litigation' because they often arise from operations conducted many decades ago, leaving an unwanted 'legacy' in the form of actual or alleged contamination." (Citations omitted).

L.P., or their predecessors in interest. The three plaintiffs sought damages, remediation and injunctive relief.

The suit was removed to this court by BEPCO, L.P. and BOPCO, L.P. on the basis of diversity jurisdiction and plaintiffs' motion to remand was denied by the district judge (Doc. 52). Thereafter, the cases were severed and each plaintiff was allowed to proceed under their own docket number (Id.).

On December 3, 2014, Ritchie Grocer filed its "First Supplemental and Amending Complaint" naming BEPCO, L.P., BEPCO GENPAR, L.L.C., BOPCO, L.P., and BOPCO G.P., L.L.C. as defendants. Plaintiff alleged the defendants were "liable for damages caused by the oil and gas exploration and production related activities of [their] predecessors...." Plaintiff entered a prayer for relief seeking: compensatory damages, punitive damages, costs, injunctive relief, remediation, unjust enrichment damages and all other equitable relief. In response, defendants filed the instant partial motion to dismiss.

The motion, having been referred by the district judge, is properly before me for report and recommendation.

## Law and Analysis

Motion to Dismiss

To survive a motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6), the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Id. All well pleaded facts shall be deemed true and all reasonable inferences must be drawn in the plaintiff's favor. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 239 (5th Cir.2009). Nonetheless, a motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6) "is viewed with disfavor and rarely granted." Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir.1982).

Fraud

Plaintiff alleges the defendants engaged in fraud by failing to warn of the toxic and hazardous nature of the contaminant waste left on the property as a result of oil and gas exploration and production. Fed.R.Civ.P. 9(b) requires a party alleging fraud to state with particularity the circumstances constituting fraud. Louisiana law defines fraud as misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage or to cause a loss or inconvenience to someone. La.Civ.Code art. 1953. The same article provides that fraud may be the result of silence or inaction. Under Louisiana law, in order to find fraud from silence or inaction, there must exist a duty to speak or to disclose information. Thomas v. Pride Oil & Gas Props., Inc., 633 F.Supp.2d 238 (W.D.La. 2009).

The elements of an action for fraud are (1) a misrepresentation of a material fact; (2) intent to deceive (fraudulent intent); and, (3) justifiable reliance and resulting damages. Cullotta v. Sodexo Remote Sites Partnership, 864 F.Supp.2d 466 (E.D.La. 2012). Mere silence or inaction, without fraudulent intent, does not constitute fraud. Terrebonne Concrete, LLC. V. CEC Enterprises, LLC, 76 So.3d

3

502 (La.App. 1 Cir., 2011). Fraud cannot be predicted on mistake or negligence. Id.

Here, plaintiffs fail to assert a single allegation that there was a duty to inform, that any silence by defendants was with the intent to deceive, or that plaintiff reasonably relied on the defendants' silence to its detriment. Rather, this case is similar to Guthrie v. Plains Resources, Inc., 2013 WL 2471670 (W.D.La.) in which the court noted that there were no allegations distinguishing each individual defendant and its individual responsibility for fraudulent activity; no information on how, when, or where the defendants actively concealed the pollution; no revelation of the source of the defendants' duty to inform; and, no explanation as to why the defendants' failure to inform was misleading.

As plaintiff has failed to adequately plead fraud, the claim should be dismissed.

Punitive Damages

Plaintiff acknowledges the defendants were never engaged in conduct between the applicable punitive damages period, September 1, 1984 and April 16, 1996; therefore, it concedes it cannot maintain a claim for punitive damages.

Continuing Tort

To determine whether there is a continuing tort, "the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminated, even though the damage persists and may progressively worsen." Hogg v. Chevron USA, Inc., 45

So.3d 991, 1003 (La.App. 5 Cir., 2011). In this case, the alleged operating cause is the deposit and storage of oilfield wastes in unlined pits.

The same operating cause existed in Marin, 48 So.3d 234 (La.2010); thus, the plaintiff attempts to analogize the entire Marin case to the one at hand. First, plaintiff claims "Marin holds that as long as an oilfield pit remains open, the torts committed by virtue of the construction or use of the pit continues." No such holding was issued in Marin. Statements to that effect were made but only when explaining how the facts of Marin fit the continuing tort test. Second, plaintiff's attempt to make the status of the pits a central issue in this case is completely misplaced. In Marin, the defendants closed the pits on plaintiff's property in response to a statewide order. That order, passed in 1986, was prospective in application; thus, it did not create a duty on the defendants in the instant case to close any pits. The court simply found the act of closing the pit under the facts of that case constituted the termination of continuing conduct.

Here, the facts indicate that the damage causing conduct ceased in 1965 when all oil and gas exploration ceased and the defendants ceased using the pits. (Doc. 64-5, p.1048-1066). Though damage may have been brought about by the disposal of waste in pits, the resulting damage does not give rise to a continuing tort. See Hogg, 45 So.3d 991 (La.2010); Marin, 48 So.3d 234 (La.2010). Accordingly, the cause of action should be dismissed.

5

Continuing Trespass

A continuing trespass is a continuing tort and as such, the operating cause of the injury must be continuous. Plaintiff argues that there is a continuing tort because defendants exceeded the scope of the lease when defendants' predecessors disposed of pollutants on its property. In support, plaintiff cites Vermillion Parish School Bd. v. BHP Billiton Petroleum (Americas), Inc., 2005 WL 2406157 (W.D.La.) which allowed a trespass claim – not a continuing trespass claim – to be remanded to state court.

The allegations asserted by plaintiff cannot constitute a continuing trespass as all of the alleged conduct ceased 50 years ago. Again, it is not the continued presence of contamination that is the operating cause of the injury but rather the activities that caused the contamination. See Hogg, 45 So.3d 991 (La.2010). See also Wagoner v. Chevron U.S.A., Inc., 55 So.3d 12, 25 (La.App. 2 Cir. 2010). The claim should be dismissed.

Civil Fruits

As plaintiff concedes it cannot maintain a viable claim pursuant to article 486, its claim should be dismissed with prejudice.

Article 667

Defendants argue that plaintiff fails to allege any conduct before 1996 which qualifies as ultra-hazardous activity; thus, it cannot maintain a claim under article 667. Plaintiff has sufficiently alleged that defendants engaged in ultra-hazardous activities for purposes of a motion to dismiss having asserted that BEPCO and BOPCO, through the acts of its predecessors, disposed of radioactive oilfield

waste which resulting in damage to plaintiff's property in the form of contamination.

Though plaintiff has stated a claim under article 667, to ultimately prevail, it must still establish defendants, via their predecessors, were at fault. As explained in Inabnet v. Exxon Corporation, 642 So.2d 1243 (La.1994), neither strict liability nor absolute liability apply. Plaintiff must establish more than causation and damages as consideration must be given to "other applicable codal and statutory rules and legal principles and other pertinent considerations" such as "temporal order of the leases or other rights, the nature of the rights, the type of activities normally incidental to the use for which the rights were granted, the damage-causing party's knowledge of the existence of the damaged party's rights, the availability of alternative methods of exercising the right so as to cause little or no damage, and others." Id. at 1252.

Articles 2317 and 2322

Plaintiff asserts a claim for premises liability under articles 2317 and 2322. To establish a claim under 2317, he must allege "(1) the thing causing his damage was in the custody of the defendant; (2) the thing had a 'defect' or a condition creating an unreasonable risk of harm; and, (3) the defective condition caused plaintiff's injuries." Hebert v. Sw. La. Elec. Membership Corp., 667 So.2d 1148, 1157 (La.App. 3 Cir., 1995)(Citation omitted). To establish a claim under 2322, he must allege "(1) ownership of the building; (2) the owner knew or, in the exercise of reasonable care, should have known

7

of the ruin or defect; (3) the damage could have been prevented by the exercise of reasonable care; (4) the defendant failed to exercise such reasonable care; and, (5) causation." Broussard v. State ex re. Office of State Bldgs., 113 So.3d 175, 182-183 (La.2013).

Plaintiff alleges the defendants had *garde* of the pits and equipment used in exploration and production activity that caused the pollution. Even accepting that as true, plaintiff fails to assert more than a broad allegation that the wells, facilities and other structures were defective or in ruin. Accordingly, Ritchie Grover fails to properly assert a claim for premises liability under either article 2317 or 2322. See Alford v. Chevron USA Inc., 13 F.Supp.3d 581, 608-609 (E.D.La. 2014).

Unjust Enrichment

Plaintiff argues that it cannot proceed under the theory of unjust enrichment if it has viable tort, contract and/or mineral code claims. Having found that plaintiff does have viable claims, its claim for unjust enrichment should be dismissed with prejudice.

Mineral Code Article 22

Plaintiff asserts a claim under Mineral Code article 22 which provides:

> The owner of a mineral servitude is under no obligation to exercise it. If he does, he is entitled to use only so much of the land as is reasonably necessary to conduct his operations. He is obligated, insofar as practicable, to restore the surface to its original condition at the earliest reasonable time.

La.R.S. 31:22.

8

At issue in the motion to dismiss is whether the plaintiff asserted the existence of a mineral servitude. In its opposition, plaintiff fails to address the assertion directly. Instead, it argues the mineral leases are dismemberment of ownership of the land which created real rights with some characteristics in the nature of limited of personal servitudes. No authority for this proposition is advanced. Accordingly, I do not find that the plaintiff asserted a plausible claim under Mineral Code article 22.

Louisiana Civil Code Art. 576, 577 and 645

Plaintiff also seeks damages or repairs pursuant to Civil Code articles 576, 577 and 645. Again, plaintiff fails to allege that defendants possessed servitudes; but instead argues the dismemberment of ownership created real rights which have some characteristics of personal servitudes. No binding authority for the proposition was cited; accordingly, I do not find that plaintiff has adequately asserted a plausible claim under articles 576, 577 and/or 645.

Restatement (Second) of Torts, §324A

In the original complaint, the original three plaintiffs alleged the defendants were liable under the Restatement (Second) of Torts, as interpreted by Louisiana jurisprudence, because "one or more of the defendants assumed duties owed by other to the plaintiffs to protect plaintiffs and their [p]roperty from contamination and harm." Other than this bald allegation, there is nothing in either of the complaints which sufficiently alleges these defendants or their predecessors undertook any duty to render services to plaintiff or its

predecessors. Accordingly, plaintiff has failed to state a claim and it should be dismissed with prejudice.

Louisiana Civil Code Article 2688

Plaintiff seeks damages pursuant to article 2688 which requires lessees to notify lessors of damage to their property and to pay for any damages caused by their failure to notify. The article was enacted in 2005 and cannot be applied retroactively to alter the obligation of any contracts with the defendants' predecessors. Block for Reliance Ins. Co., 433 So.2d 1040 (La.1983). As such, this claim should be dismissed.

### Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that the partial motion to dismiss (Doc. 77) be **GRANTED** in part and **DENIED** in part. Plaintiff's claims for fraud, punitive damages, continuing tort, continuing trespass, civil fruits, unjust enrichment and those asserted under Louisiana Civil Code articles 576, 577, 645, 2317, 2322 and 2688, Mineral Code article 22 and Restatement (second) of Torts §324(A) be **DISMISSED** with prejudice. In all other respects, the motion should be **DENIED**.

### Objections

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may

be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before making a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana on this 16th day of September, 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

11