RECEIVED
MAR 13 2018
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| RITCHIE GROCER CO. | CIV. ACT. NO. 14-2868 |
| -vs- | JUDGE DRELL |
| 2 H INC., ET AL. | MAG. JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

Pending before the court is a motion for summary judgment filed by defendants BEPCO, L.P., BOPCO, L.P., BEPCO Genpar, L.L.C. and BOPCO GP, L.L.C. ("Defendants") in the above-captioned legacy lawsuit. (Doc. 120). Considering the arguments of the parties, as well as applicable law and jurisprudence, Defendants' motion will be GRANTED.

### I.  BACKGROUND

#### A. *Relevant Facts*

Plaintiff is an Arkansas corporation authorized and doing business in the State of Louisiana and the owner of the tract of land at the center of this litigation.[1] Plaintiff alleges that Defendants, all either engaged in oil and gas exploration and production activities on Plaintiff's land or successors-in-interest to earlier oil and gas exploration and production companies, are liable for damage caused to their land by them and/or their predecessors-in-interest under Louisiana law (hereinafter "predecessors"). Specifically, Plaintiff complains that its land is

---

[1] The tract at issue in this case is described as "approximately 125 acres, more or less, situated in the East Half of the Northeast Quarter of Sections 41 and 31, Township 1 South, Range 3 East..." Original and Supplemental Complaint (Docs. 1-2, 87) at ¶¶ 1, 3.

1

contaminated as a result of the disposal of toxic and hazardous substances[2] in unlined pits during day-to-day operations of Defendants and their predecessors. Moreover, Plaintiff asserts that Defendants sought to conceal their pollution of the property at issue and failed to inform Plaintiff of the true nature of the pollution, such that Defendants were unaware of the facts necessary to assert these claims until they were contacted by an attorney, Mr. Eddie Knoll in April of 2013.[3]

### B. *Procedural History*

This legacy lawsuit was originally filed in the Twelfth Judicial District Court for the Parish of Avoyelles by plaintiffs Justin Dale Tureau ("Tureau"), Kenneth James Guilbeau ("Guilbeau") and Ritchie Grocer Company "("RGC").[4] Defendants timely removed the suit to this court based on our federal diversity jurisdiction, citing the varying state citizenships among the parties and attesting that the amount in controversy exceeds the $75,000 threshold, exclusive of interest and costs, as required under 28 U.S.C. § 1332.[5] Plaintiffs subsequently filed a "Motion to Remand" and Defendants filed a "Motion for More Definite Statement, Partial Motion to Dismiss for Failure to State a Claim and Motion to Sever."[6] Ultimately, Plaintiffs' motion to remand was denied and Defendants' motion to sever was granted.[7] Each Plaintiff's claims were assigned a separate docket number and were designated as "related" matters.[8] All

---

[2] The hazardous substances alleged to have been disposed of in unlined pits on Plaintiff's land include, but are not limited to, "naturally occurring radioactive material" ("NORM"), produced water, drilling fluids, chlorides, hydrocarbons and heavy metals. Original and Supplemental Complaint (Docs. 1-2, 87) at ¶ 7.
[3] Original and Supplemental Complaint (Docs. 1-2, 87) at ¶ 14; Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 124) at p. 9.
[4] Original Petition (Doc. 1-2) at ¶ 1.
[5] Notice of Removal (Doc. 1) at pp. 2-3.
[6] Docs. 17, 18.
[7] Judgment dated 9/30/14 (Doc. 52).
[8] Id. For reference, the other related matters are now known as Tureau v. 2H, Inc., et al. (1:13-cv-02969) and Guilbeau v. 2H, Inc., et al. (1:14-cv-02867).

other pending motions were terminated and the parties were directed to refile any desired motions in the appropriate individual case, tailoring the arguments to the facts of each case.[9]

RGC filed its First Supplemental and Amending Complaint in June of 2015, revising its list of named defendants to BEPCO L.P., BEPCO GENPAR, L.L.C., BOPCO, L.P. and BOPCO GP, L.L.C.[10] Defendants' instant motion pleads the peremptory exception of prescription as to all remaining claims by Plaintiff in this suit.[11] The motion is fully briefed and ready for disposition.

## II. ANALYSIS

Ordinarily, the party pleading prescription of one or more claims bears the burden of proof on this issue. If, however, prescription is evident on the face of the pleadings, the burden shifts to the opposing party to demonstrate that the subject claim or claims falls within the ambit of an exception to prescription.[12] A federal court sitting in diversity will apply Louisiana's substantive law regarding prescription, where applicable.[13]

In this case, RGC's complaint alleges that it did not have actual or constructive knowledge of the pollution forming the basis of this suit or Defendants' role in that pollution until "less than a year prior" to its filing.[14] Alternatively, RGC's complaint alleges a litany of acts by Defendants which it contends "prevented [RGC] from availing [itself] of the causes of

---

[9] Id.
[10] Doc. 87.
[11] Motion for Summary Judgment (Doc. 120).
[12] La. C. Civ. P. Art. 927; Carter v. Haywood, 892 So.2d 1261, 1267 (La. 2005) citing Camp v. Correa, 828 So.2d 502, 508; Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383, 1386 (La. 1993).
[13] Guaranty Trust Co. v. York, 326 U.S. 99 (1945).
[14] Original and Supplemental Complaint at ¶ 14 (Docs. 1-2, 87).

action alleged herein."[15] RGC lists, among these, hiding or concealing pollution; failing to inform it of pollution; fraud and misrepresentation.[16]

*Contra non valentem agree nulla currit praescriptio* is a well-recognized exception to the Louisiana law precept that prescription runs against all persons.[17] Jurisprudence recognizes four (4) limited instances in which *contra non valentem* may be applied, including, relevant for our purposes here two of them:

> ...where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action ["Type 3"]; and...where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant ["Type 4"]."[18]

While Plaintiff's complaint is sufficient to shift the burden to Defendants with respect to its type four contra non valentem claims, we find that the complaint – even as amended - fails to allege facts with particularity for purposes of type three *contra non valentem*. Fed. R. Civ. P. 9(b), La. C.C.P. Art. 856. For that reason, we find that the burden remains with Plaintiff as to type this specific type of *contra non valentem*.

As to Type 3, explained by the Louisiana Supreme Court in the controlling case of <u>Marin v. Exxon Mobil Corp.</u>, 48 So.3d 234, 252 (La. 2010), in order to support a claim for *contra non valentem* in which the debtor's own acts prevent the creditor from availing himself of his cause of action, Plaintiff must demonstrate three (3) elements: (1) Defendants engaged in conduct which

---

[15] Id.
[16] Id.
[17] La. C. C. Art. 3467; <u>Wells v. Zadeck</u>, 89 So.3d 1145, 1150 (La. 2012) citing <u>Harvey v. Dixie Graphics, Inc.</u>, 593 So.2d 351, 354 (La. 1992) and <u>Cartwright v. Chrysler Corp.</u>, 232 So.2d 285, 287 (1970).
[18] Id., citing <u>Plaquemines Parish Commission Council v. Delta Development Company, Inc.</u>, 502 So.2d 1034, 1054.

rose to the level of concealment, misrepresentation, fraud or ill practice; (2) Defendants' actions effectually prevented Plaintiff from pursuing his cause of action; and (3) Plaintiff's inaction was reasonable under the circumstances.

Comparing the conduct alleged by RGC in the instant suit with that detailed in Marin, a seminal case in the application of *contra non valentem* to legacy lawsuits, the court is convinced that Plaintiff's allegations fail to rise to the level required to sustain a type three *contra non valentem* exception. Specifically, in Marin, the state high court highlighted allegations that Exxon "lulled" its plaintiffs into believing remediation attempts undertaken on the property in question were successful and agreed that payments by Exxon to plaintiffs for sugarcane losses were likely further attempts at such "lulling" to stave off litigation. Nevertheless, the court's conclusion was that these self-serving practices were not in the nature of fraud, but rather in the vein of understandable attempts at preventing what Exxon could naturally predict to be costly and time consuming litigation. The court determined that none of Exxon's overtures prevented plaintiffs from availing themselves of their cause of action. Thus, the Louisiana Supreme Court reversed the Louisiana First Circuit Court of Appeal's affirmation of the trial court's application of *contra non valentem* in this case, declaring that a portion of plaintiffs' claims were indeed prescribed.

By contrast, the RGC petition alleges only that Defendants buried oilfield waste in unlined earthen pits, thereby contaminating RGC's property and then failed to notify anyone of their prior contamination and the potential impact thereof. Taken as true for these purposes, the conduct alleged by RGC simply does not constitute the sort of fraud or ill practices which would satisfy the elements of type three *contra non valentem*, as it does not even approach a level of misrepresentation or "lulling" as was discussed in Marin. Moreover, observing the applicability

of Fed. R. Civ. P. 9(b), we find that Plaintiff fails to properly support this exception with specific fact pleading.

Type four *contra non valentem* is known as the "discovery rule" and, as described above, bases a suspension of prescription upon the notion that the plaintiff did not and could not reasonably know of his cause of action during the prescriptive period, through no fault of the defendant. The central factor under applicable law is "the acquisition of sufficient information, which, if pursued, will lead to the true condition of things." Young v. International Paper Co., 179 La. 803 (La. 1934). The discovery rule requires the court to assess "…the reasonableness of the plaintiff's action or inaction in light of his education, intelligence, and the nature of the defendant's conduct."[19] Thus, Plaintiff is required to demonstrate that his ignorance is not attributable to his own fault or willful neglect.[20]

In Marin, the court concluded that plaintiffs' 2003 suit was not entitled to type four contra non valentem protection because the facts showed "sufficient knowledge or information" was accrued at least by 1991 and, failing that, by 1995. It was undisputed in Marin that plaintiffs were aware of sludge in earthen pits that still existed at the time the pits were covered and, moreover, of the failure of some of these pits by 1991. Additionally, the court determined that, applying the likely four-year period for assessment of sugar cane crop viability, plaintiffs accrued sufficient knowledge or information at least by 1995. Addressing plaintiffs' argument that they did not acquire "full knowledge" of their claims until after their expert, Greg Miller, conducted testing to determine the extent of damage to their property, the court held that plaintiffs' eight year delay in filing suit after acquisition of knowledge of some injury was unreasonable. Specifically, the court held that, "[t]he fact that it might take an expert to determine the extent of damage in an oilfield

---

[19] Marin, 48 So.3d at 246.
[20] Wells v. Zadeck, 89 So.3d 1145, 1150 (La. 2012).

6

contamination case does not prolong the prescriptive period until an expert is actually hired and has performed his testing." Marin, 48 So.3d at 251. Thus, the court found that the initial knowledge of damage should have prompted plaintiffs to pursue full knowledge of their claims no later than 1995.

In the instant case, the leases upon which Plaintiff's contract claims are premised terminated in 1944 and 1965.[21] Thus, on its face, contract claims arising from the 1938 lease prescribed sometime in 1975 under Louisiana's ten-year liberative prescriptive period for such claims.[22] Similarly, Plaintiff's tort claims have, on their face, prescribed under Louisiana's one-year liberative prescriptive period.[23] Assuming that Plaintiff's complaint adequately pleads facts in support of the discovery rule, we find that Defendants have born their burden of proving prescription.

At the outset, we certainly can envision cases where *contra non valentem* may apply As observed above, however, each case may rise or fall based on its own factual backdrop. Plaintiff does not dispute that the presence of oilfield remnants is readily known and viewable on its property. Correspondence attached as Exhibit 3 to Defendants' reply brief discloses that, as the lessor, RGC was keenly interested in the production activities of its lessees and, accordingly, no doubt aware of the existence of production equipment on its property.[24] Additionally, deposition evidence indicates that this corporation had the requisite background and experience to know enough about oil production to be spurred to further investigation long before this suit was proposed to it via counsel. Defendants' motion cites the testimony of Plaintiff's current President,

---

[21] Motion at p. 8; 1938 Lease at Doc. 120-3, specifying that such lease terminates sixty (60) days after cessation of production on the property; 1943 Lease at Doc. 120-14; Release of 1943 Lease at Doc. 120-15.
[22] La. Civ. C. Art. 3499.
[23] La. Civ. C. Art. 3493.
[24] Ritchie Grocer correspondence at Doc. 125-3.

John Benson ("Benson"), and Plaintiff's expert, Greg Miller, stating that the oil derrick present on Plaintiff's property measures approximately 100 feet tall and that it protrudes above the tree line and is able to be seen on Google Earth. Moreover, Defendants note that aerial photographs of the property show the presence of the derrick and other remnants, such as concrete pads, since at least 1941.[25] Perhaps most significantly, Benson, himself familiar with oilfield equipment and activities from his time as an oilfield employee, testified that he was aware of the presence of oilfield equipment on the property during his visits in the "early 1990s."[26] He didn't report the issue or ask that the equipment be removed at that time because, as an employee during that time, it "wasn't [his] call."[27] The gravamen of the evidence, taken as a whole, illustrates that there was nothing new – factually speaking – after RGC's historic and ongoing knowledge of the presence of oilfield equipment on its property which would have constituted the sort of prompt which jurisprudence deems "sufficient information" to cause RGC to make further inquiry or to file this suit. Indeed, even the allegations of the petition here relate only possible injuries and not actual ones. The existence of an inquisitive flyover after the filing of the suit is insufficient to bootstrap and save a claims which has already prescribed.[28]

When applied to these facts, the jurisprudence instructs that Plaintiff possessed knowledge sufficient to prompt further investigation which would have apprised it of the true nature of the injury at least by 1941. Plaintiff does not allege, nor do the facts as argued suggest, that Benson's early 1990s visit was its first indication of the presence of oilfield equipment on its property. Thus, we find that on its face, whether under La. Civ. C. Art. 3499, pertaining to contract claims, or Art.

---

[25] Motion at pp. 4-5 and 11-12, citing depositions of Benson and Plaintiff's expert, Greg Miller.
[26] Id. at pp. 4-5; Deposition of Benson at 8:7-24.
[27] Id.
[28] We do not decide, nor comment upon what might have been, had the flyover and resulting expert opinion by Miller have occurred before the filing of this suit, in which case it would have been the only evidence of adverse impact in the record. In this, we considered whether an equitable remedy could be applied in the *contra non valentem* realm, but believe that the legal precedent cited prevents such a creative application.

8

3494, pertaining to tort claims, Plaintiff's claims prescribed prior to the filing of its 2013 complaint.

In <u>Marin</u>, the Louisiana Supreme Court cautioned that *contra non valentem* is an extraordinary remedy, to be applied only in "exceptional circumstances."[29] Here, we find no circumstance which might be termed "exceptional." RGC does not allege or show the discovery of any new facts between the discovery of oilfield equipment on its property and the filing of this suit. A careful reading of the original complaint reveals that, at the time of the filing of this suit, Plaintiff did not actual know of the existence of any actual injury, but rather alleged that the property was "believed to be contaminated by oil and gas exploration and production activities." (Doc. 1-2 at ¶ 5). As argued by Defendants, Plaintiff was prompted to file this suit only by the encouragement of counsel, not by observation of changes in the property or by acquisition of some new knowledge pertaining to its own property. The <u>Marin</u> court rejected a similar argument, noting that a jurisprudential development or the new financial motive brought about thereby does not constitute the sort of "new information" that may properly interrupt prescription in these types of cases.[30] Of course, Plaintiff is not required to hire an expert and receive a final report before it is deemed to accrue sufficient knowledge of its claim, but in this case, having no adverse experience or impact upon which to base its "new information," we find that Plaintiff's Type 4 *contra non valentem* argument fails. We also find that RGC, as continuous owner of this property for the entire period contemplated by the case history, failed reasonably to inquire as to the condition of its property, given the obvious signs of oilfield production activity present. Evidence

---

[29] 48 So.3d at 245 citing <u>Renfroe v. State ex rel. Dept. of Transp. and Development</u>, 809 So.2d 947 (La. 2002).
[30] <u>Marin</u>, 48 So.3d at 250.

suggests that the same such features existed during the 1940s and Plaintiff offers no evidence to show that its neglect was reasonable in this case.

### III. CONCLUSION

After review of Defendants' motion, as well as the briefs in support of and opposition thereto, the court finds that Plaintiff fails to properly allege facts in support of its type three theory of *contra non valentem* and fails to carry its burden of proof regarding type four *contra non valentem*. Specifically, the court finds that Plaintiff's claims, whether in contract or in tort, are prescribed. For this reason, a judgment will issue granting defendants' motion and dismissing Plaintiff's claims with prejudice.

**Alexandria, Louisiana**

**March 13, 2018**

**DEE D. DRELL, JUDGE**
**UNITED STATES DISTRICT COURT**